PROVOSTY, J.
As the log road construction train of the defendant company, loaded with cross-ties, was going out into the woods upon a log road in course of construction, and the cross-ties were being thrown off the cars to the side of the temporary track as the train went along, the woods superintendent sat at .the top of the back end of the tender with his back towards the engine, and, at his left, on the other corner of the back end of the tender, sat the rail-laying superintendent; while the plaintiff in this case was on the first car, within eight feet of them, with his back towards the engine, engaged in throwing off cross-ties which another man was pushing down to him from the pile of cross-ties on the car. The forward movement of the train brought sharply against a small tree which stood near the track a cross-tie which plaintiff was in the act of pushing’ off, and this caused the other end of the cross-tie to recoil against plaintiff and knock him off the car between the car and the tender, so that the front truck of the car ran over one of his thighs. Strange to say, the bone was not broken, but the muscles were badly bruised and lacerated, and some of them severed. The shock caused plaintiff to lose consciousness. There was considerable loss of blood, and while he was being conveyed back to the sawmill, and until ansesthetics could be administered, his sufferings were very great. It was two months before he could leave his bed, and one month more before he could go about on crutches. By the time of the trial, 17 months after the accident, he could go about without crutches, but had not yet the full use of the limb, so as to be able to do hard work — plowing, for instance. And he still had pains in the member. The blow which he received from the *972 cross-tie was on the hreast. This caused him to spit blood for two weeks, and at the date of the trial would still sometimes cause him pain. The leg has been made-an inch shorter, and has also shrunk — the testimony says one inch — whether circumference or diameter is not explained. The limb will in the course of time regain approximately its normal strength. He claims $8,000 damages. The jury allowed him $750. The defendant company has appealed, and he has filed an answer to the appeal, asking that the allowance be increased to the amount demanded.
Plaintiff had had ample experience in the construction of temporary railroads of this kind for hauling logs out of the woods, and knew that, for economy’s sake, the clearance for the road was made no wider than absolutely necessary, and that therefore at any time a tree might be so close to the track as to be struck by a cross-tie that was being shoved off a car; in fact, he had assisted in cutting out the right of way at the very place where he was injured, and had been warned against the danger of a cross-tie striking against trees in that manner, and been advised to keep a lookout for such trees.
[1] This warning, however, assumed that it would be possible for a man doing this work to keep a lookout and thereby avoid the danger while doing the work, whereas the evidence shows that this was not possible. The evidence shows that the manner of doing the work was as plaintiff was doing it — with the workman’s back towards the engine; and it shows that the cross-ties had to be thrown off so rapidly that the workman had no time to turn his head for keeping a lookout. Under these circumstances, the greater intelligence and knowledge which the law imputes to the employer made it incumbent upon the superintendent, sitting within eight feet and doing nothing hut looking on as he was, to either keep a lookout, or have one kept, or else warn the plaintiff of the danger of thus remaining with his hack towards the engine while doing the work. The real or juridical cause of the accident was this manner of doing the work with the workman’s back towards the engine; and against this, the plaintiff received no specific warning. Nay, he was expected to assume that position, and this was tantamount to an instruction to do so; and, if it was not expected of him, it had at any rate the tacit approval of the defendant through the superintendent who was looking on and saying nothing to the contrary. We think that, under familiar principles, the defendant company owed the duty of either specially warning plaintiff against that manner of doing the work, or else keeping a lookout in order that the place he was working in might be made safe by timely warning being given him of the-approach of trees against which the cross-ties might strike.
[2] The plaintiff is a young colored man, who was earning $1.50 a day as a laborer. We think the amount allowed him entirely inadequate, and that it should be increased to $2,500; and the judgment, as so amended, is affirmed, at the cost of appellant.